# Illinois Official Reports

## Appellate Court

---

*Claypool Drainage & Levee District v. Weber*,
**2015 IL App (3d) 140614**

---

| | |
|---|---|
| Appellate Court Caption | CLAYPOOL DRAINAGE AND LEVEE DISTRICT, Plaintiff-Appellee, v. STEVE WEBER, Will County Treasurer and *ex officio* County Collector, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0614 |
| Filed | August 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 13-MR-57; the Hon. Lance R. Peterson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James Glasgow, State's Attorney, of Joliet (Philip A. Mock, Assistant State's Attorney, of counsel), for appellant.<br><br>Charles L. Schmidt, of Morris, for appellee. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Justices Schmidt and Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1    Will County treasurer, Steve Weber, appeals from the decision of the circuit court granting a writ of *mandamus* to the plaintiff, Claypool Drainage and Levee District. The circuit court held that the county treasurer's attempt to withhold funds from the drainage district for the extension and collection of drainage district assessments was prohibited by section 9 of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 9(a)). On appeal, the treasurer argues since the district failed to appoint a district treasurer to collect the taxes and relinquished collection responsibilities to the county treasurer, he may be lawfully reimbursed for services provided to the drainage district. We hold that the treasurer's attempt to withhold funds violates the state constitution and affirm.

¶ 2                                    BACKGROUND

¶ 3    The Claypool Drainage and Levee District was established in Grundy County by statute in 1896. The district is responsible for maintaining proper storm water drainage within the drainage district, which covers portions of Grundy and Will Counties, and is funded by the levy of assessments on properties located within the district under section 5-19 of the Illinois Drainage Code (70 ILCS 605/5-19 (West 2012)).

¶ 4    Prior to 1998, the district collected assessments by sending landowners and municipalities invoices through the mail. In 1998, the district relinquished responsibility for collection of drainage assessments to the Will County treasurer's office, and the county treasurer began serving as collector of assessments for the district. Since that time, assessments have been collected in the same manner as general property taxes and are shown as a line item on real estate tax bills issued by the county treasurer.

¶ 5    In 2013, the county treasurer sent a letter to the district stating that he intended to charge a "25-cent per parcel fee" for the cost of providing collection of assessment services in accordance with section 4-37 of the Drainage Code. In the letter, the treasurer quoted a portion of section 4-37, which states that the collector "shall be reimbursed by each district and subdistrict for the actual costs for his services" and that the costs shall be paid out of district funds (70 ILCS 605/4-37 (West 2012)).[1] In response, the drainage district filed a two-count complaint against the treasurer in his capacity as the Will County treasurer and *ex officio* collector for the district. Count I was dismissed by defendant's motion and has not been appealed. Count II alleged an action for *mandamus*, seeking to compel the treasurer to pay over to the district the full amount of the drainage assessments.

¶ 6    The parties filed cross-motions for summary judgment on the *mandamus* claim. The district argued that the treasurer misconstrued its authority under section 4-37 of the Drainage Code and that, even if the code allowed the treasurer to charge for assessment collections, it would violate article VII, section 9(a) of the state constitution. Attached to the district's motion was an affidavit signed by Robert Koerner, the commissioner of the drainage district. Koerner

_____

[1]Prior to 2013, no fees for collection services were withheld in accordance with a 1998 settlement agreement between the former Will County treasurer and the district, which prevented the treasurer from charging the fee.

averred that the county treasurer performed no other services on behalf of the district other than the collection and remittance of annual drainage assessments. He further stated that accounts payable, bank reconciliations, and other banking and account functions were performed by drainage district, not the county treasurer.

¶ 7 In his motion, the treasurer claimed that retaining the cost of collection from the district was authorized by statute and did not violate article VII, section 9(a), of the constitution because the district chose to have the county treasurer collect its levied assessments rather than collecting them through an appointed district treasurer as permitted under section 4-38 of the Drainage Code (70 ILCS 605/4-38 (West 2012)).

¶ 8 Following a hearing, the trial court granted the district's motion for summary judgment and denied the treasurer's motion. In ruling in favor of the district, the trial court noted that the basis for its decision was that the parties did not dispute that the Will County treasurer was only responsible for levying and collecting the assessments. The court granted *mandamus* relief and entered an order instructing that the office of the Will County treasurer could not charge or withhold a fee for the extension and collection of drainage assessments.

¶ 9 ANALYSIS

¶ 10 The issue as framed by the parties is whether article VII, section 9(a), of the state constitution precludes a county from charging a drainage district for the cost of extension and collection of assessments levied by the district where the district has the ability to collect its own taxes.

¶ 11 Article VII, section 9(a), of the Illinois Constitution states:

> "(a) Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes." Ill. Const. 1970, art. VII, § 9(a).

¶ 12 As it relates to the compensation of county tax collectors, section 4-37 of the Drainage Code provides:

> "County collector to collect assessments. Except as hereinafter provided in Section 4-38, the County Collector of the County in which any of the lands of the district are situated shall collect all drainage assessments provided for by this Act and assessed against lands in his county. His official bond as County Collector shall stand as his bond as district collector. The collector shall perform such other duties and functions as are specified elsewhere in this Act. The collector shall be reimbursed by each district and subdistrict for the actual costs for his services. Such costs shall be paid out of the funds of the district for which the services were rendered." 70 ILCS 605/4-37 (West 2012) (amended by Pub. Act 83-739, § 1 (eff. Jan. 1, 1984)).

In conjunction with the collection provisions of section 4-37, section 4-38 provides that the commissioner of the drainage district "shall appoint a treasurer of the district." 70 ILCS 605/4-38(a) (West 2012). The district treasurer "may also serve as district collector and then shall collect all drainage assessments provided for by this Act, and perform such other duties and functions as are imposed upon district treasurers and collectors elsewhere in this Act." 70 ILCS 605/4-38(b) (West 2012).

¶ 13      In *City of Joliet v. Bosworth*, 64 Ill. 2d 516 (1976), the Illinois Supreme Court analyzed the collection of taxes as a county function under article VII, section 9(a), of the state constitution. In that case, the parties addressed the constitutionality of a portion of a statute concerning "fees and salaries" which allowed counties to bill the taxing district for its proportionate share of actual costs incurred by the county in extending and collecting taxes on behalf of all taxing districts. The supreme court held that article VII, section 9(a), of the constitution makes the collection of taxes a county function to be supported solely by county taxes and precludes counties from being reimbursed by other taxing districts for the collection of assessments. *Id*. at 524. The court concluded that the fees and salaries statute was unconstitutional, finding that the intention of article VII, section 9(a) was to eliminate the practice of counties charging local taxing districts for tax collection services. *Id*. at 529. In reaching its conclusion, however, the court noted that "[s]ection 9(a) of article VII is, of course, limited in scope to the particular functions specified therein, and does not purport in any way to limit or restrict counties and local taxing districts from contracting among themselves as to other matters." *Id*. at 531.

¶ 14      The interrelation of article VII, section 9(a) and a county's ability to withholding funds from a taxing district was also discussed in *Century Community Unit School District No. 100 v. McClellan*, 27 Ill. App. 3d 255 (1975). There, the trial court granted a writ of *mandamus* to a local school district, ordering the county treasurer to pay over funds withheld from the school district to cover the costs of assessment, extension and collection of the taxes levied by the district. *Id*. at 257. On appeal, the court held that the district was entitled to the writ under the dictates of the constitution. The court interpreted article VII, section 9(a) and concluded:

> "As we understand this constitutional provision, it means that fees not based upon funds disbursed or collected and not based upon the levy or extension of taxes may be collected, providing they are collected according to a law or ordinance, deposited with the treasurer of the unit, and are not used to pay corporate officers or employees or to pay office expenses." *Id*.

¶ 15      In this case, the treasurer attempted to charge the drainage district for services rendered in the "extension" and "collection of assessments" for the district. In light of the plain language of the Illinois Constitution, the county treasurer may not charge fees based on the collection, levy or extension of taxes. See *People v. Molnar*, 222 Ill. 2d 495, 518 (2006) (in construing a statute, we must look to the terms according to their plain and ordinary meaning). Thus, the trial court properly granted summary judgment in the district's favor and granted *mandamus* relief compelling the treasurer to pay over all drainage assessments collected on its behalf.

¶ 16      Nevertheless, the treasurer maintains that reimbursement for the actual costs of services is expressly permitted under sections 4-37 and 4-38 of the Drainage Code and does not violate article VII, section 9(a) because the drainage district is permitted to collect its own taxes but has delegated that duty to the county treasurer under the statutory scheme. He cites *Little v. East Lake Fork Special Drainage District*, 166 Ill. App. 3d 209 (1988) in support of his position.

¶ 17      In *Little*, the county treasurer filed suit against the drainage district for the cost of his services for the district. There, the treasurer not only collected drainage assessments but also served as treasurer for the drainage district. The services provided by the county treasurer extended beyond levy and collection and included services such as maintaining books for each account, maintaining computer records, handling investments, maintaining money market accounts, sending out special billings, collecting and depositing funds, disbursing checks and

preparing the financial reports for the district. *Id*. at 213. The court held that the reimbursement of the treasurer for the actual costs of such services under sections 4-37 and 4-38 of the Drainage Code was not prohibited by article VII, section 9(a), of the Illinois Constitution. *Id*. at 217-18.

¶ 18 Here, it is undisputed that the Will County treasurer provides no services to the drainage district in the capacity of district treasurer. All recording, banking and accounting functions are provided by the district treasurer, who has been appointed by the district commissioner under section 4-38. The county treasurer acts solely as the collector for the district, and the only service the treasurer provides is the execution and collection of assessments. Unlike the county officer in *Little*, the county treasurer in this case is charging fees solely for the service of levying and collecting drainage assessments, rather than the additional services of district treasurer. Thus, contrary to *Little*, the application of sections 4-37 and 4-38 to allow the county treasurer to charge a drainage district for the collection of assessments intrudes on the constitutional limitations of section 9(a) of article VII of the Illinois Constitution. As the supreme court stated in *Bosworth*, the intent expressed in section 9(a) is to "preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes." *Bosworth*, 64 Ill. 2d at 524. In this case, the treasurer cannot charge the drainage district a fee for the general service of collecting assessments without violating that express intention.

¶ 19                                     CONCLUSION
¶ 20        The judgment of the circuit court of Grundy County is affirmed.

¶ 21        Affirmed.